### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **CASE NO. 8:05CR302** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **TENTATIVE FINDINGS** |
| | ) | |
| **FRED P. CAPPELLANO,** | ) | |
| | ) | |
| Defendant. | ) | |

The Court has received the Revised Presentence Investigation Report ("PSR") and the following: the Defendant's adoption of the PSR (Filing No. 24);[1] the government's objections to the PSR (Filing No. 25); the government's amended objections to the PSR (Filing No. 29); and the Defendant's motion for downward departure (Filing No. 26). *See* Order on Sentencing Schedule, ¶ 6. The Court advises the parties that these Tentative Findings are issued with the understanding that, pursuant to *United States v. Booker,* 2005 WL 50108 (U.S. Jan. 12, 2005), the sentencing guidelines are advisory.

### PROCEDURAL AND FACTUAL BACKGROUND

The Defendant, Fred P. Cappellano, pleaded guilty to Counts I, II, III and IV of the Superseding Indictment charging him with four counts of theft from a program that receives federal funds, in violation of 18 U.S.C. § 666(a)(1)(A). The parties did not enter into a plea agreement. The offenses concern the sale of cars by Easy Car Leasing, d/b/a Budget Rent A Car ("Budget"). When Budget sells cars, the business receives refunds for property

---

[1] The Defendant's adoption of the PSR was mistakenly docketed as an "objection." (Filing No. 24.)

taxes paid but not accrued. Cappellano embezzled funds that should have gone to Budget in the form of refunds.

In the Revised PSR, Cappellano's base offense level is enhanced by 8 offense levels pursuant to U.S.S.G. § 2B1.1(b)(1)(E), based on a loss amount of $119,714.42 for guideline purposes. The PSR noted that, by agreement of the parties, Cappellano was to pay restitution in the amount of $120,637.62. (PSR, ¶ 18.)[2] However, the record reflects disagreement with respect to the amount of restitution. (Filing No. 22 (Plea Transcript), at 30-31; Filing No. 29.)

The Addendum to the PSR reflects that the government objects to ¶ 18, arguing that it can prove a loss amount over $120,000 for guideline purposes. In preparing the PSR, probation officer concluded that, with respect to specific transactions in dispute, that Cappellano should be given the benefit of the doubt primarily because of Budget's poor accounting methods and the admission by the Budget office manager that it is possible that a Budget employee, rather than Cappellano, could have embezzled the funds in dispute.

The government filed objections to the Revised PSR with the Court. The government does not request a hearing, but rather states that this matter may be resolved based on the record.

## GOVERNMENT'S OBJECTIONS

The government objects to ¶¶ 18 and 28 as well as additional paragraphs that relate to the loss amount as it affects both the offense level and restitution amount. The government's Amended Objections are accompanied by two submissions of evidence.

---

[2]The difference between the loss and restitution amounts is explained by documentation produced showing that Budget received cash for a transaction in the amount of $115.58, and therefore Cappellano is not responsible for this amount. (Filing No. 29, Ex. 10.)

The evidence consists of two affidavits of the case agent accompanied by documentary evidence. (Filing Nos. 29, 32.)

***Filing No. 29***

Attached to the first affidavit is the spreadsheet prepared by the Douglas County Treasurer's Office ("DCTO") showing a total loss amount of $120,637.62. (Filing No. 29, Ex. 3.) Also attached is the FBI spreadsheet reflecting a total loss of $121,117.62. (Filing No. 29, Ex. 4.) The difference of $480.00 is explained by documentation showing that a July 14, 2004, transaction in that amount was inadvertently left off of the DCTO's spreadsheet. (Filing No. 29, Ex. 5.)

Cappellano had not received documentation for three March 2, 2005, transactions, and he reserved the right to contest those transactions once supporting documentation would be provided. That documentation appears to have been provided, and as of this date the record reflects no objection to those transactions. Each transaction is in the amount of $339.16, totaling $1,017.48. (Filing No. 29, Ex. 6.)

Of the records previously provided to Cappellano, and after resolution of the $115.58 amount, Cappellano disputes two transactions: a February 28, 2003, transaction in the amount of $445.50 reflected in Filing No. 29, Ex. 7;[3] and a July 23, 2004, transaction in the amount of $220.83, reflected in Filing No. 29, Ex. 8. The PSR also refers to two additional transactions in question--two November 7, 2002, transactions in the amounts of $66.25 and $75.62. (PSR, ¶ 18.) Allowing Cappellano the benefit of the doubt with

---

[3]The Addendum to the PSR states that Cappellano disputes the signature on this receipt, stating that it is different from the signatures on most other receipts.

respect to these transactions, the probation officer calculated a loss for guideline purposes of $119,714.42.[4]

The additional evidence provided by the government shows that the following transactions were left off of the FBI spreadsheet: one of the three February 24, 2004, transactions in the amount of $308.33 (Filing No. 32, Ex. 2); and a January 25, 2005, transaction in the amount of $282.90 (Filing No. 32, Ex. 3). According to the government, Cappellano was provided documentation for these transactions and has not disputed them. (Filing No. 32, ¶ 10.)

The case agent's conclusion is that the total loss amount is $121,593.27, calculated by adding the amounts of these two transactions to the amount previously reached by the case agent, $121,002.04. The Court's tentative findings are that, given the preponderance of the evidence standard of proof, the government has met its burden of proving a loss amount of $121,593.27 for both guideline and restitution purposes.[5]

In summary, the Court's tentative findings with respect to Cappellano';s guideline calculation are: the base offense level is 6; the base offense level is enhanced pursuant to § 2B1.1(b)(1)(F) by 10 levels for a loss amount of $121,593.27; a 2-level role enhancement pursuant to U.S.S.G. § 3B1.3 is applied for abuse of public or private trust; the adjusted offense level is 18; 3 levels are deducted for acceptance of responsibility; the total offense level is 15; the criminal history category is I; the guideline range is 18-24

---

[4]The probation officer's amount of $119,714.42 amount represents the case agent's original total of $120,002.04 minus the amounts of the four disputed transactions.

[5]The Court notes that the DCTO loss amount of $120,637.62, added to the $480.00 transaction inadvertently left off of the DCTO spreadsheet, totals $121,117.62. Therefore, the inclusion of this amount alone raises the loss amount over the $120,000 threshold.

months; the fine range is $4,000-$40,000; and restitution shall be made in the amount of $121,593.27.

**DEFENDANT'S MOTION FOR DOWNWARD DEPARTURE**

The Defendant moves for a downward departure pursuant to U.S.S.G. § 5K2.0(a)(2), (3) & (4). Cappellano argues that the matters of sick time and benefits lost upon his termination of employment due to the commission of the offense are matters not adequately taken into consideration by the sentencing guidelines and are exceptions to the general rule that such matters are ordinarily not relevant. Additionally, Cappellano argues that these matters are appropriately considered pursuant to 18 U.S.C. § 3553(b) to provide him with medical care in the most effective manner.

Certainly, the loss of employment benefits is unfortunate for Mr. Cappellano. However, the Court was not presented with any authority directly supporting the request for departure. The Court is unable to find any reported case law supporting the request. The Court fails to see a link between a downward departure, lost employment benefits, and the provision of effective medical care. Mr. Cappellano may request placement in a federal medical facility, and in any event the Bureau of Prisons will provide him with needed medical care during his time of incarceration. Therefore, the motion is denied.

IT IS ORDERED:

1. The Defendant's objections to the Revised Presentence Investigation Report (Filing No. 24) are denied as moot;

2. The government's amended objections to the Revised Presentence Investigation Report (Filing No. 29) are granted;

3. The government's objections to the Revised Presentence Investigation Report and request for a hearing (Filing No. 25) are denied as moot;

4. The Defendant's motion for downward departure (Filing No. 26) is denied;

5. Otherwise the Court's tentative findings are that the Presentence Investigation Report is correct in all respects;

6. If **any** party wishes to challenge these tentative findings, the party shall immediately file in the court file and serve upon opposing counsel and the Court a motion challenging these tentative findings, supported by (a) such evidentiary materials as are required (giving due regard to the requirements of the local rules of practice respecting the submission of evidentiary materials), (b) a brief as to the law, and (c) if an evidentiary hearing is requested, a statement describing why an evidentiary hearing is necessary and an estimated length of time for the hearing;

7. Absent submission of the information required by paragraph 3 of this Order, my tentative findings may become final; and

8. Unless otherwise ordered, any motion challenging these tentative findings shall be resolved at sentencing.

DATED this 15th day of December, 2005.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge